Council for the Parrish Davis case. Step forward and introduce yourself, please. My name is Elizabeth Body. I represent Mr. Davis. We're going to give everybody about 15 minutes. We're going to reserve a couple of minutes for rebuttal. And we've read the briefs. We've read the record. We're pretty familiar with this case. So if you could just go right to your high points, that would be fine. Everybody get started, please. Good morning. Of the arguments that we raised in our brief, I would like to stay focused today on argument one. I'd also like to point out, though, as I spoke with the system states attorney yesterday, I'm withdrawing argument three because the record is too ambiguous to support it. As to argument one, the issue litigated below was whether Witherspoon, the paraplegic driver of the Honda, consented to the search. The officer here did not find the drugs in an unsealed container or a bag or an item that opens and closes as part of its normal function. Instead, he found the drugs after prying apart a built-in and seemingly sealed structural component of the car. An area that is not intended or expected to be opened, an area that is not easily or routinely opened or accessed, and therefore an area that has a heightened expectation of privacy. In consent cases, the scope of the search is never limitless. It always depends on its objective reasonableness. So what would a typical, reasonable person believe about the exchange with the officer? A typical, reasonable person could expect an officer to search a container or an item that easily, routinely opens and closes. Say, for example, the middle console or an ashtray. But a typical, reasonable person would not expect that by giving consent to search, he was authorizing officers to pry apart and dismantle a built-in, seemingly sealed structural component of the car. But when you say reasonable person, so you say it's not a reasonable officer. That person's not an officer. You're saying just somebody. Correct. A typical, reasonable person. And a typical, reasonable person would not expect that he was authorizing officers to dismantle a structural part of the car. And this is supported by DICTA and Florida v. Himino, where the U.S. Supreme Court said that a person who gives consent to search a trunk, it was unreasonable to expect that he would think that he was authorizing officers to break into a locked suitcase in the trunk. The same holds true here. It is difficult to conceive of any situation where a civilian would consent to the police dismantling a built-in part of the car. No, it wasn't his car. Right? He did tell the police, I believe, that it was his car. It was his car? I believe he, in a statement to the police, he said he purchased the car. Okay. Did, but Witherspoon did say that- Well, not, I'm sorry, not Witherspoon. The defendant said in a statement to the police that it was his car. Witherspoon said it was not his car. Right. Sorry. Yes. Witherspoon said it wasn't his car. Right. I'm sorry. And the car was fitted for him because he was a paraplegic. Right. That's what I thought. So Ann Witherspoon made eye movement and had movement to the backseat? He, yes, he gestured toward the backseat area and supposedly- This was after the police looked at the back and saw nothing. This was when they were in the process, they were still in the process of searching the backseat. They hadn't exhausted their search yet. They were still in the process of searching, and he gestured toward the backseat area, not to the armrest. He didn't mention the armrest. He gestured toward the backseat area. No, we don't hear him mention anything. He didn't mention anything. He was nonverbal. Right. He was nonverbal, and his nonverbal conduct wasn't- It was too vague to inform the officers that the drugs were in the armrest and that they could pry open the armrest. It's not as if the officer said, hey, where are the weekend fund drugs? Where are they? We know they're in here. And he said, oh, they're in the armrest, and you can pry it open and search it. That's not what happened. His conduct was at best ambiguous, and in the face of ambiguous conduct, the officer should have, and any reasonably prudent officer would have, asked for explicit authorization before he dismantled part of the car. Because the officer did not do so, the search here exceeded the scope of the consent. Well, the officers did see the white bag being transferred. When they looked in the backseat, they didn't see a white bag. It wasn't in the front seat. It wasn't in the backseat. No people were holding it. It had to be somewhere. So the officer saw what he believed, he saw a 2-by-3-inch triangle, a shape of what he thought was a corner of a white plastic bag. He saw it being given to someone inside the car. He never saw anyone open up a secret compartment and put it in the bag. And there was no evidence here precluding the possibility that someone discarded the bag. If you recall, the police were watching the whole time. However, the passenger, the female passenger, by the time the car was stopped, she was outside the car and walking toward the house. No one ever said, I watched her the entire time, and I never saw her take this corner of a bag and throw it somewhere. No one ever said that. And when the police were still searching the car, they hadn't exhausted their search yet, so they didn't know the bag was missing. And in this context, Contreras is relevant, and it shows the lack of information the police had here. In Contreras, the police knew that the drugs were packaged in a brown paper bag. They knew there was a secret compartment in the car. They saw the defendant put the bag in the rear where the secret compartment was, so they knew the bag was missing. This is totally different. We don't have evidence that the drugs were packaged in a white plastic bag. We don't have evidence that there was a secret compartment in the car. There was nothing suspicious about this armrest. There was nothing to suggest it had been modified or altered in any way. It was not open or ajar. No one had been seen touching it or opening it. There was none of that evidence. But doesn't the auto exception apply here, though? Well, this gets to the State's argument that the State is going to get up here and argue for the first time on appeal that probable cause justified the search. Correct. First and foremost, the argument is forfeited because the State never raised it below. Now, I know this Court can affirm on any basis in the record. It doesn't mean it has to, and it certainly can't affirm on the basis of probable cause here because there was no probable cause. The surveillance officer did not see an exchange as the State repeatedly asserted in its brief. He saw Urbina, a suspected drug dealer, give what looked like a white plastic bag to an unknown person inside of a Honda. It was a little bit more than a suspected drug dealer, wasn't it? Wasn't there an ongoing investigation? They had previously purchased drugs from him, even if it was a known drug dealer. All they saw was a known or suspected drug dealer give what looked like a white plastic bag to an unknown person inside of a Honda. They didn't see anyone inside of the Honda give any money or anything in exchange for the drugs, and no one below thought this gave the police probable cause. The trial court said the police have a reasonable suspicion. Even the officer said, I stopped the car for investigatory purposes, to investigate the identity of the Honda documents because he didn't know anything about them and to investigate whether a crime had occurred. Without more, merely witnessing a suspected or even known drug dealer give what looked like a white plastic bag that could have contained a myriad innocuous objects. This white plastic bag was being transferred in a very furtive fashion, a very specific, deliberate, furtive fashion with the cars head-to-head, the driver's doors trying to hide what was going on. I mean, this is not your normal... I don't think there's anything extraordinary. There's nothing extraordinary about a car parked in a parking lot and another car pulling up and receiving something from that person. What about the way they were parked? Usually people don't park so they open the doors... One car backed in, one car... And the doors open, doors closed, and they left immediately. And what about the fact that they're in a shopping mall, shopping center, and nobody gets out to go shopping? They just do this transaction and then they leave. Well, there's the shopping mall. There's no evidence that that was in a high narcotics area. There's no evidence that Withersburg Urbina regularly transferred drugs in a white plastic bag. But that isn't... The point is that they were on an investigation on narcotics. They were on... And that's why they happened to be there, and it wasn't for the Honda. It was because they were looking at the other... They didn't have evidence that Urbina was scheduled to sell drugs at that time or to sell drugs in that location or that he had previously sold drugs at that location. How is that relevant? Excuse me? How is that relevant? Because it shows the lack of evidence that we have here. All we have is a suspected known drug dealer giving a white plastic bag to someone that is not involved. The police did not know anything about this person. There was no suspicious behavior on the part of the people inside of the Honda. As I said, there was no evidence... No. Okay. I'm saying they did not have probable cause to search the car. To search the car. Not without more evidence. So what would they have needed under your scenario? What would they have needed in order to search the car? They would have needed additional evidence like the fact that Urbina regularly transferred drugs in a white plastic bag, that Urbina was scheduled to sell drugs at that time or in that location or scheduled to sell drugs to someone inside a Honda or had previously sold drugs at that location, or that people inside the Honda, the police knew something about them or they were acting suspiciously. We don't have any of that. Well, we do have some suspicious conduct. The parking was suspicious. Two cars parked in the parking lot. And they followed the car, the Honda after. Well, in exchange, as Coughlin noted, nobody got out of the shop. It was two doors open so nobody could see very well, and then they pull away. Right. But merely receiving something from someone doesn't give the police proper cause. But this is a drug. This is a long-term investigation of a drug dealer. Right. And all we have is a suspect. It's not a long-term. They had purchased a few times from this person. No, no. They didn't know about Mr. Davis having purchased before. No, I'm saying the investigation Urbina was, I didn't get the sense it was long-term. They had purchased a few times from him before. It was an ongoing investigation. But all they have is a suspected or known drug dealer give something to an unknown person. Certainly, drug dealers, not everything they touch is drugs. Certainly, they can go into a Marshall's or they can go into Target and buy something and give it to a friend. But certainly, they can go into the grocery store and buy something and give it to their child. But the police didn't know anything about the Honda at that time. They knew nothing. All they knew was that Urbina was a suspected or known drug dealer and gave what looked like a white plastic bag to someone. In a very peculiar way. I don't think merely parking, even if one car faces forward and the other one reverses into the parking spot, I don't think that's such an extraordinary circumstance that would give the police probable cause, not without more evidence. If that constitutes probable cause, then the police really can search anyone who receives anything from a suspected or known drug dealer. And that's not what the Fourth Amendment allows. The police need more than mere hunch. They need more than mere suspicion. They need probable cause. Well, what about their experience as police officers in drug enforcement? They still didn't have enough information. They knew that Urbina was a suspected drug dealer, but they didn't know anything else about it. The record is clear. There are other parking spaces in this lot. These two cars did not have to pull next to each other. I don't know about the other parking spots in the parking lot. I believe I read that in the record, that this was not a jam-packed lot. There were some other spaces. So you have these two cars. One parks and pretty soon another one pulls up. And instead of pulling in the normal way, goes out of his way to pull in so that his driver's side is facing the other driver's side, so that when both of them open their driver's side doors, it will conceal whatever is happening between them. And then the police see what looks like a white bag from a suspected drug dealer passing hands. And then they see it going to the back seat. When they search the car, it's not in the front seat. It's not in the back seat. And you're trying to make it sound like they ripped this car apart. I'm not sure I see that in any evidence. I think the only evidence is that they pulled apart the top of the armrests, which to me sounded sort of like, you know, those armrests that are on airplanes where the tray is. They sort of flip open. If an officer who's used to searching for drugs notices an armrest that has a panel on it that appears to be movable, he moves it. He never said that there was a panel on it that appeared to be movable. He said there was a panel, and after some time, he was able to pry it open. He first looked for tools to pry it open because he couldn't do it. And then he ultimately pried it apart. He dismantled a portion of the car that seemingly was sealed and built into the car. And found the drugs and the guns. Correct. Right. And the police did not have probable cause to do that because they did not have enough information. All they had was a suspected or known drug dealer give a white plastic bag. And they didn't have consent to do it. Well, we're not talking about Sheriff Andy of Maybury here. We're talking about experienced drug cops. Right. But still all they have is a drug dealer gives something to someone who they don't know anything about. Certainly drug dealers can give things to people that aren't drugs. Certainly drug dealers can possess things that are not drugs. I don't think this court can say that everything a drug dealer touches contains drugs. And everything he gives someone contains drugs. That's not realistic. Drug dealers can touch things that aren't drugs. And without more, there was nothing to give the police probable cause to believe that that white plastic bag contained drugs. Except the fact that it came from a drug dealer. We're not talking about the known or suspected drug dealer giving Mr. Davis something at a birthday party. We're talking about him giving him something in a very suspicious manner in a parking lot. There was nothing extraordinary about the parking lot. There was no evidence that it was in a high narcotics area. And I don't think the circumstances are so extraordinary that they gave the police probable cause. Well, what about, again, Mr. Weatherspoon's actions? They were indicating something to Officer Moak. They weren't indicating that drugs were in the armrest and that they could dismantle the armrest. I mean, they were indicating something's back there. I mean, he wouldn't have made those movements unless there was some reason. And it wasn't obvious to look there. So when he goes, you know, look in the back. If you don't see it, you have an experienced officer who said he's seen compartments many times, trap departments. He didn't say secret compartments in armrests many times. He said cars do have traps. No, but he had experience where he found drugs in traps. In traps. Right. Not specifically in armrests, but in traps. In traps. And traps can be anywhere in the back. Right. So he was looking for the trap. Right. So the question is, was it reasonable for the officer to believe that drugs were in that armrest and without more evidence? The answer is no, because there was nothing suspicious about the appearance of the armrest. There was no evidence it had been modified or altered in any way. It wasn't open. It wasn't ajar. No one was seen touching the armrest. No one was seen putting anything in the armrest. And this, again, is what distinguishes this case from Contreras. Because in Contreras, the police knew that there was an armrest. They were told there was a secret compartment or not an armrest, a secret compartment in the car. They were told that the defendant packaged drugs in a brown paper bag. They saw the defendant put the brown paper bag in the back area of the car where the car was and come out empty-handed. They never saw the defendant discard the drugs. Isn't that exactly what happened here, Counsel? Excuse me? Isn't that exactly what happened here? Not at all. In Contreras, the white package is seen going into the car, and then nobody can find it? Well, in Contreras, the police knew that the brown paper bag contained drugs. But my point is the white package is nowhere to be found when the car was stopped. It was a plastic bag. It wasn't packaged. Whatever it was, it was white, and it was nowhere to be found when the car was stopped. By the time the officer searched the armrest, he had not finished searching the car, so he didn't know that the bag was nowhere to be found yet. He was still in the process of searching the car when he dismantled the armrest. And, again, as I pointed out, there was a possibility that the passenger could have discarded that white plastic bag. She was already outside the car. You all concede that there was no white package in the car prior to searching the compartment? I can say that the police had not yet exhausted their search of the car, so they did not definitely know that there was no white plastic bag in the car by the time they searched the armrest. And back to Contreras, the police knew that there was a secret compartment. Here, the police did not know there was a secret compartment. They had evidence that they corroborated that there was a secret compartment, and they were told that the defendant hid drugs in the secret compartment. We have no evidence here, again, based on the appearance of the armrest, that it was a secret compartment, and there was no evidence that the defendant was touching the armrest or put anything inside the armrest. There was no suspicious behavior in that regard at all. So for that reason, Witherspoon's gestures, his ambiguous gestures, did not give the police probable cause to believe that the drugs were found in the armrest. Because the scope of the search exceeded the consent, as I already argued, this Court should reverse the defendant's conviction. Thank you. Good morning. Assistant State Attorney Noah Montague on behalf of the people in this matter. Your Honors, may it please the Court, this matter is before this case because this defendant was in the wrong place at the wrong time. He was caught red-handed buying a package of cocaine from a man who was under surveillance by a multi-unit narcotics investigation. A man named Urbina that they had bought cocaine from multiple times before, and they were scheduled to buy more cocaine from him that night when he drove to a mall parking lot, parked his car, and didn't get out. The car the defendant was in then parked next to him, but parked in a reverse manner so the driver's side of each car was next to each other. They opened one of the doors and a handoff was seen where a white plastic bag went from Urbina's car into the defendant's car. Counsel argues it could have been anything. I mean, people hand things off. That doesn't mean it was drugs. That is correct. And counsel cited the case of People v. Trisbee in her brief. She didn't talk about it here. In her reply brief. And Trisbee is very much that case because that was two people that the officers had never seen before. They saw an exchange. And then they went after the person who got the money, and they ended up searching his pocket. And what the court said was, well, you didn't have enough there to justify the search. And the difference here is that you have not only their investigation of Urbina and not just the fact that he was a suspected drug dealer. The state maintains this is a known cocaine dealer. This is not suspected. They have bought cocaine from him multiple times. They were scheduled to buy more that night, and they, in fact, did buy more that night. That's actually in the record. But more than that, you also then have the totality of the circumstances of where this handoff took place, how it took place. Your Honors mentioned that it was at the mall. Nobody went in the mall. Nobody got out of their car. They drove off in different directions. But how they parked was odd about it. The conclusions that the state can draw from the way this exchange took place are three things. One, that it's clear that it was prearranged. Otherwise, they would have had to spend some amount of time looking for each other. They wouldn't have known to park in this odd fashion. They had to have set it up beforehand to know what they wanted to do and how they wanted to do it, to meet at the exact place, to park in the exact way, and then to conduct this handoff and then immediately leave. There was no, oh, well, my car's over here. I'll come by you sort of thing. And then what you can obviously see from these facts is that it's an out-of-the-ordinary exchange. This was not, you know, two old friends handing over unique goods. Well, you don't know that. Well, you don't know that. Well, you don't know it, but in the totality of the circumstances. How would you know that? You don't know even who the people are in the handoff. True. So it could be old friends. Maybe they were. I'm sorry. That part, yes, it could be old friends. But probable cause is a common-sense, practical determination. And in common sense, people's common experience is this is not a common way for people to exchange something between them. It's not something that happens fairly often. That's the conclusion the State was trying to draw there. But the other thing that you can see from the officers' observations is that it was purposefully obscure. They opened the driver's door and then exchanged, we found out later from the defendant's statement, $28,000. The officers didn't see that because that driver's door was open, because it was purposefully obscure. So those circumstances, knowing Urbino was a drug dealer, knowing the way this exchange took place, that gave the officers probable cause, not just reasonable suspicion, as the court found. Well, what about the problem of going to the arm rest? Well, what you see in the automobile exception cases is that once there is probable cause, the search for contraband. And the cases say you only need a fair probability that contraband is in the car. So once you have contraband in the car, then you can search anywhere that the contraband might be. And that hidden compartment, of course, is somewhere that would fit the contraband. And so just like the glove compartment, you could look in the glove compartment. If there's a hidden compartment and you find it, you can look in there because it didn't fit. But they didn't know the hidden compartment. True. But they were, yes. And then you get into the fact that, well, they were told. Well, they weren't told. They weren't told. So when you look at what happened with the exchange, the officer was inside the car searching the car. And the other officer was outside the car speaking to the driver who had, to the State's recollection, all the car, they checked the registration, and it wasn't registered to any of the occupants. And every occupant denied ownership on the site. A defendant in a statement later said, actually, that's my car. I bought it. But on the site, everyone denied ownership. And they asked the driver, can we search the car? And he said, go ahead and search it. It's not mine. And so they searched the interior of the car. And then one of the officers is trying to convince the driver to tell them where the narcotics are, where the white bag is. And he doesn't just nod his head. He says, whispers, it's over there. That's on page F120 of the record. He actually whispers, it's over there. Now, from the head nod and the look or whatever, the officer understood it here in this armrest. Now, what logical conclusion could the officer come up with looking at that armrest? Obviously, when he looked at the armrest, he didn't see a white bag on top of it. So what other logical conclusion could this officer draw but to look inside it? And the Fourth Amendment, it's important to remember, does not require officers to be naive. They are allowed to bring their experience with them. And these were experienced drug officers. And they realized, after doing this for many years, that hey, when somebody says there's something in that armrest, I realize that sometimes armrests contain and cars in general contain hidden components. Well, they realize in general that cars that are used in narcotics transactions often have traps. Correct. And hidden compartments. That's correct. And that's based on their experience. So when the driver of the car says it's over there, they haven't seen it in the little slip, you know, pouch behind the back seat. They haven't seen it on the floor. They haven't seen it under the seats. They haven't seen it anywhere in the front seat. They haven't seen it in the glove compartment. They didn't see it in the little part between the driver's seat and the passenger seat. So it's not any place normal. So when the driver says it's over there, he's saying it's there. Look harder. Correct. And there's simply no other logical conclusion that you could draw. You know, if someone took my briefs and put them under the table, and I went and looked for them and I didn't see them, and someone behind the bench nods and says it's over there and points at the table, I can logically draw the conclusion that they mean someone put them under the table and just looked there. It's a little more difficult physically in a car, of course, but that's the point. The car was built to make it difficult to find the narcotics. And on the issue of waiver, the state would argue that we haven't waived this, that because the state is the prevailing party in this matter, that under Illinois law, we are allowed to argue that this court can affirm for any reason. And if you look at the cases that the defendant has cited, Holloway is distinguishable because that wasn't the prevailing party in that case. So the different rules apply as to what you can argue on appeal. But if you look at the remaining cases, cases like Denson and Henderson, in particular Johnson and Johnson, the defendant was the prevailing party and prevailed on the Sixth Amendment with regard to certain statements in this court. Then on appeal, changed the argument to the Fourth Amendment, and the court said that that wasn't waived because it wasn't inconsistent and allowed that argument. So the state maintains that we have not waived this argument. We can make a probable cause argument, and under the totality of the circumstances that there was, in fact, probable cause here. But, again, you know, the state is still arguing as well in the alternative that the circuit court found there was reasonable suspicion that a drug transaction occurred. And that's important. The court didn't find that they properly pulled this person over for whatever traffic infractions the officer testified to. The court found that the facts known to the officers justified a Terry stop based on the drug transaction evidence that they had seen. And, obviously, the state maintains that the consent was valid and that there's just no logical conclusion to draw from what the driver said other than look in the armrests. Obviously, he didn't say that exactly. But, you know, again, the driver, the car, the officers, these people aren't required to be legal technicians. They're not drawing up a contract. It's a practical consideration. And here the state would ask this court to affirm on either ground, either probable cause or reasonable suspicion and consent. Thank you. As to probable cause, please can search anywhere in the car that might reasonably contain drugs. We can't forget the word reasonably. And without more here, there wasn't reason for the police to believe that the armrest contained the drugs. As I said, there was no evidence that the armrest had been tampered or modified. It was not open. It was not a jar. The record shows it was just an ordinary armrest. The police need more to believe that that armrest contained drugs. Your experience is that, and we have very experienced narcotic investigators involved here. He never said, in my experience, traps are hidden in armrests. He said, yes, sometimes cars have traps. He didn't say, in my experience, I've seen them in an armrest. He never said that. Does that matter where the traps are? Why is that relevant? Because then it would give him more reason to believe that this armrest was capable of concealing the drugs. But without any suspicious activity as to the armrest, without anyone touching the armrest or opening the armrest, or without the armrest appearing to have been modified, there was no reason for the officer to believe that the drugs were in the armrest. And as to Witherspoon's comments, he never mentioned the armrest. He never gestured toward the armrest. Okay, but this all happened in a very short period of time. So, for example, there wasn't time to hide the contraband in the wheel well or under the tire in the trunk or go out of the car and hide it in some obscure place, the running panel or something along the outside of the car. If this recently experienced officer believed that there were drugs in this car, they had to be inside the car someplace. And he didn't report the seats. He started with the most likely places first, the armrests, because they were with easy reach of the person who was behind the driver, the passenger who was behind the driver, to whom he believed the white bag had been given. So where could this guy reach? Where could this guy get to from where he was sitting? Well, the state never foreclosed the possibility that someone inside the car discarded the bag. As I said before, the passenger was outside of the car walking toward a house by the time the police stopped the car. So she, no one said, I watched her the entire time, and I never saw her take this 2-by-3-inch corner of the bag and throw it somewhere. No one ever said, I didn't see her throw the bag. I'm not talking about the front seat passenger. I'm talking about the back seat passenger. Well, what I'm saying is that someone in that car, there was an opportunity for someone to discard it. The police never foreclosed that possibility because they never said, I watched the past. The bag could have been given to the front seat passenger. Right? And the police never said, I watched her the entire time, and I didn't see her throw it. I didn't see her discard it. She was outside of the car. I thought the record indicated they saw the white bag being transferred to the back seat. Right, but they also followed the car for 45 minutes. So during that 45 minutes, the back seat passenger could have given it to the front seat passenger. And then the front seat passenger, when she exited the car, could have discarded it. No one ever said, I watched her, and I didn't see her throw it. No one ever said that. So the bag wasn't, the police did not have a reason to believe that the bag was missing. And the police, by the time they searched the panel in the armrest, hadn't finished searching the car yet. So they didn't know the bag was missing. Well, they had a reasonable belief that there was a bag, a white bag, containing drugs in the back seat of the car with an easy reach and easy concealment by the passenger who was behind the driver. There aren't that many places in a car that you can do that with that aren't traps and don't require a lot of tools. There's no indication that there were any tools in the back seat of the car. So it had to be someplace that was pretty easy to get at. And as I said before, the police did not have any information that this white bag contained drugs. It was a white bag. And given the fact that the passenger was outside of the car and walking toward a house, she did have the opportunity to dispose of that bag before the police stopped the car and searched it. Well, she didn't leave the scene, though, did she? She was brought back to the scene. Right, so wouldn't it have been fairly easy to, under your theory, looking to see if something had been wrapped? The police never said anything about it. They never said we watched her the entire time. We saw her get out of the car. We saw her walk toward the house. We know she didn't throw the bag. They never said anything like that. But she's on the scene, correct? They brought her back to the scene. She left. She was walking toward a house. She was outside of the car. But she never went into a house or into any other. She crossed the street. She was walking away from the car. She had an opportunity to discard the bag. She was reasonably close to the scene. Well, she was brought back to the scene. And as to the circumstances under which the surveillance officer observed the drug dealer give a white plastic bag, the state describes them as odd and uncommon. Odd and uncommon isn't enough to give the police probable cause. Maybe it's enough to give them a hunch or mere suspicion. But the Fourth Amendment requires more than that. The police need a probable cause. And without more information, like information that the drug dealer packaged his drugs in a white plastic bag or information that he was scheduled to sell drugs at that location at that time or had previously sold drugs at that location at that time, the police here do not have probable cause. Forfeiture applies to both parties. This court should find that the state should not get a second bite of the apple and find that the state forfeited the argument. And as I said before, I know this court can't affirm on any ground on the record. It can't affirm on the basis of probable cause because a probable cause was lacking here. Questions? No. Thank you. We'd like to thank counsel for their excellent briefs and excellent argument. This case will be taken under consideration and an order will be entered in a reasonable amount of time.